May it please the Court, David Cooper on behalf of the appellant SaurikIT, generally referred to in this case as Cydia. The complaint here alleges that Apple entered into millions of new agreements and engaged in countless acts of enforcement within the limitations period, ultimately excluding Cydia from the market as a competing iOS app store. The law is clear that a new agreement within the limitations period is an overt act that suffices for a continuing violation. The law is equally clear that acts of enforcement during the limitations period are overt acts that are sufficient for a continuing violation. Apple's argument ultimately comes down to the idea that because it had a policy to exclude competing app stores beginning in 2008, then acts taken in furtherance of that policy can't be challenged, and that is not the law. So, can we get to those allegations? So if I look at your opening brief, you say you have extraordinarily detailed allegations about the new agreements, but then you also say you're not required to plead the changes with specificity, there's no heightened pleading standard. So then I look at your reply, and it looks like the only thing that you allege that is new in the agreement is on page 15, and it looks like it only deals with developer agreements, not with consumers, and it says, These contracts have not stayed static over the years, but rather have been modified by Apple periodically to shore up perceived holes in and add new restrictions on developers' ability to use alternative app stores and or payment processing services. These ever more restrictive changes include updates within the four years preceding the original complaint in this lawsuit. So my question to you is, what are the perceived holes? How were they shored up? What are the new restrictions? And where is any of that in the complaint? Because all I saw was this repeat of this exact verbatim language over and over. I looked at the paragraphs that you cite here on page 15, paragraphs 32, 57, 69, they just keep saying, you know, this incantation of shoring up perceived holes, adding new restrictions. But those are conclusory. So where do you say what exactly those perceived holes are? What exactly the new restrictions are? And what was the shoring up? Sure. So there are not detailed specific allegations about exactly what was different about the new agreements from the old agreements. We will concede that. But I think there is a very important distinction to be made here between what is new in the agreements and the existence of new agreements. Can I ask you something? Why do you believe you're not required to identify, okay, you just conceded they're not detailed allegations of what is, okay, let me back up. Let me get a concession that we're just talking about iOS app developer agreements, right? We are not talking about consumer agreements when they buy a new iPhone or activate an iPhone device. Is that right? Or iPad or whatever. So I don't think that's necessarily true. I don't think that the complaint details... But where does the complaint, this whole shoring up and adding new restrictions, I've looked throughout your complaint. That's only with regard to iOS app developers agreements. Where do you ever say that about consumer agreements? Again, I don't think we make that detailed allegation as to consumer agreements. Okay. But do you make detailed allegations as to iOS app developer agreements? I think it depends what this court means by detail. We said that they shored them up, that there were holes in them, and that they... What are the holes? Sorry, go ahead. No, no. I'm sorry. Well, I have the same question. What are the ever more restrictive changes? What are the holes that were shored up? I mean, I also, you know, I've been looking at paragraph 32. That's where you seem to make the allegation, but I just, I can't, I couldn't find any details about any of those allegations. Go ahead. I understand the court's concern, but I think there are two very important points to make here. The first is that what the standard is when we're talking about a dismissal on statute of limitations grounds, which is we don't have to provide detailed allegations. It must be apparent from the face of the complaint that it fails the statute of limitations. That's the standard. And clearly, this does not fail that standard when there is an allegation, even if it's not detailed. The second point is that we are not required to show changes... How do you satisfy Twombly and Iqbal? They say mere conclusory allegations are not sufficient. So it's not a conclusion. It's just we don't provide the specific fact to show exactly how it was changed. But again, that's not... And Twombly and Iqbal are about meeting the specific elements of the claim, not defeating an affirmative defense for which there is no obligation to plead the sufficiency. But again, this isn't ultimately what this case comes down to, because even if, even if this court believes that the allegations are not sufficient to show a change, they are unquestionably extraordinarily detailed in showing the existence of new agreements for every new customer, every new iPhone, every new... This is a paragraph number, and we can have a more focused conversation. Right. So I point this court to pages 176 to 77, 180, 207. That's paragraphs 26, 31, and 95. And I'll also point to paragraph 28, and that's on page 177 to 78. I'll explain exactly why I'm pointing to those paragraphs. Okay. 26, 28, 31, and 95. Did I get the universe? Yes. So what 28 says is that all of these agreements are device-specific. That is, if you have a new iPhone, you have a new agreement. Paragraphs 26, 31, and 95 detail that this warranty agreement applies to every new iPhone and exactly what is contained within this warranty agreement. Okay. Let's do it. Let's do it. Okay. 26. Although Cydia and the many third-party developers using Cydia were far ahead of Apple early on, Apple opened its own competitive app store in July 2008. As it has done countless times since other types of apps, Apple lifted many of the popular aspects of the Cydia store, incorporated them into the app store. For example, many of the apps and packages distributed through Cydia were ultimately incorporated by Apple into iOS or its own apps. That's paragraph 26. I am not seeing here — I don't mean to be difficult here, but in order to rule in your favor, I need to find a change. That is what Judge Gonzales-Rogers told you. I looked at her hearing transcript. She said, I need an overt act in the statute of limitations, period. I'll give you leave to amend. And so I just need to see that. If I can see that, I will agree with you, but where is it? So I'm not arguing that there was a change in the agreement. What I'm arguing is that there was a new agreement. So for example, on paragraph 28, this is the next page, I believe, in the excerpts of record. It talks about how this practice continued within the introduction of every new model of the iPhone since 2008. Since every new — Well, then why isn't that just a reaffirmation of an old policy, which would not get you outside the time bar problem? Sure. So it's not a reaffirmation of the old policy because it is a new agreement binding new people concerning new products. And what Samsung held is that regardless of whether or not an agreement within the limitations period is effectively identical to agreement before the limitations period — But in Samsung, there was a 2006, a 2003 agreement, and they differed from each other. So I don't see how Samsung really supports your position. I mean, here we're talking about the same warranty agreement over and over again. But go ahead. So the only way it differed in Samsung was that it applied to a second-generation product. And here, it effectively is exactly the same thing. That is, you have different generations of iPhones, different customers. And remember, those customers were not bound by the prior warranty agreements before the limitations period. They are being bound by the current warranty agreements within the limitations period. And Apple has a choice. Apple can choose not to require those warranty agreements. It can choose not to bind the app developers to the agreements that they bind them to. And again, those app developers, every single time they have a new app that they're putting up in the iOS system, they have to enter into a new agreement for the new app. And that is an overt act within the limitations period that's causing injury by that very act. But even if we put aside the agreements for the moment, there are also acts of enforcement within the limitations period which are specifically alleged. And so, regardless of whether or not there is a change, what the Supreme Court held in Hanover to... Can I ask you a question about Samsung? Sure. Okay. So I agree with you that it did extend an old 2003 license to a second-generation product. But didn't it also... The court didn't just hang on that difference, it said, nor did it cover expansion to future technological developments. So that's the new and different, right? So... But the same is true effectively for the agreements here, which is that they apply only to the specific phone or the specific app at issue. Every time there is a new phone, a new customer, a new app developer, a new app, it does not apply. There is, in fact, a new agreement that imposes new restraints that effectively prevent Cydia from getting customers. And it is those acts that Cydia is challenging here. Let me ask you a slightly different question here. The district court held that the allegations in the amended complaint relating to Apple's technological updates qualified as an overt act. Yes. That restarted the statute of limitations. Yes. So at that point, should the district court have denied Apple's motion to dismiss instead of parsing out all of the types of overt acts and dismissing only portions of your client's claims? It certainly could have done so. I don't know that there is a requirement that it not dismiss partly and instead sort of let the claims go forward because part of it should have gone forward. So I don't know that there was a requirement either way. Certainly, I believe that would have been an option for the district court. Can we compare your technological restriction allegations? I'm looking at paragraph 76, ER 200. More specifically, Apple's 2018 and 2019 technical restrictions included introducing runtime code modification prevention, pointer authentication, physical map co-designing, memory tagging extensions, and other control mechanisms that specifically target and prevent Cydia and alternatives like Cydia from competing with Apple because they effectively prevent users from using Cydia or any other alternative app store on iOS at all, even if they wish to obtain such alternatives through the Internet to modify their phone through lawful means. If you ask me, that would be specific enough to satisfy Iqbal, and I would agree with Judge Gonzalez-Rogers that that was sufficiently pled. But I don't see that level of detail with regard to your either warranty agreements with consumers or iOS app developer agreements. I just don't see, I just see the same old incantation of shoring up holes and adding new restrictions that are anti-competitive. If we're talking about the new changes, I understand the court's concern. But if we're talking about the existence of the new agreement, we actually cite the agreements themselves. And so I believe there is sufficient specificity there. But let me put that aside for the moment and talk, at least for a moment, about the enforcement. Because the enforcement, there are specific allegations regarding specific acts of enforcement within the limitations period that, and to be clear, under Hanover-Schuh and this court's precedent, it does not matter that the policy began before. It does not matter that the enforcement began before. If there is enforcement within the limitations period, for example, in Hanover-Schuh, you're policy. But if there is enforcement within the limitations period, as there is here, that is sufficient. And... You know, I want to look at Samsung here, and it says the adoption of the 2006 license was a new and independent act that caused new and accumulating injury because the previous 2003 license not only just applied to first generation SD cards, but it did not contemplate future expansion, nor did it foreclose future agreements on different terms. Whereas, that is what is different with the 2006 license. And anyway, why don't I, you have, you wanted to reserve four minutes for rebuttal. You have two minutes and 30 seconds left, so. Thank you, Your Honor. Okay. Good morning, Your Honors. Theodore Boutrous for Apple. The Court's exact, the questions that Your Honors are asking are exactly right. Nothing changed after 2008 and 2009. If we put this in perspective, Cydia's business model, as the complaint alleges, was to provide an app store for iOS in 2008 and 2009 on the standard iOS system. Apple then, in 2008 and 2009, according to the complaint, barred Cydia and other third party app stores from providing apps on iOS. Plain and simple. Why isn't their reading of Samsung correct, that if you, if you extend an old contract to new products, that's still a new and independent act that causes new and accumulating injury? Because, Your Honor, here Apple didn't extend a contract with Cydia at all, with Sourick. It didn't have any business relationship, as Sourick itself recognizes. What it did was simply enter into new agreements, which were simply reaffirmations of the policy, barring third party app stores. I think it really is important, Judge Koh, that in Samsung there was a 2003 agreement. Then in 2006, as you were pointing out, they entered into another agreement with the plaintiff to extend that supposedly non-compet, anti-competitive royalty to the new products. They're really comparing, no pun intended, apples and oranges here. Cydia was out of the picture in 2008 and 2009. It was barred from the app store. Nothing changed. If Apple had not entered into any agreements with any developers or any consumers, its policy and its final decision in 2008 and 2009 would have stood and Cydia would have been barred. But they say despite all the anti-competitive conduct of Apple in 2008, they were still somehow able to become the second most popular app store for iOS devices. It wasn't until 2018, 2019 that Apple killed their business. Why isn't there a change there that happened? Two points. That goes to the technological changes argument. They're saying that Apple kept making technological changes and in 2018 and 2019 made some that stopped them from illicitly cheating the system and distributing their apps, not to the iOS standard system, but to jailbroken phones where Cydia would tell consumers how to disable certain safety features and software on the phones, which creates vulnerabilities, which Apple does not want consumers to do because it can completely disrupt the ecosystem and business model it established. So that was a part of the case, though, that Judge Gonzales-Rogers parsed through, let them go forward with that case. And can I ask you, normally plaintiffs are super happy to survive MTD because then they're going to get discovery, they're going to get a settlement, and usually plaintiffs just care about surviving motion to dismiss. What is it about the technological design change claims that is less desirable such that they would want to dismiss those to appeal on the warrant? Is there more money? Are these easier to prove? What is it? I'm just trying to understand what's going on. It was really the tail wagging the dog. Clearly they decided it wasn't worth it. They were trying, according to paragraph six, they're very explicit, they were trying to piggyback off the Epic Games case, which had been filed in 2020 and a partial preliminary injunction by Judge Gonzales-Rogers was entered. And then they say they filed a similar suit, which went after the business model, which went after the exclusivity of the App Store. And then they added these allegations about technical restrictions and survived the motion to dismiss. And you're right, normally— I think the district court held that at least some of the allegations in the amended complaint regarding the technological updates satisfied the overt acts to be within the statute of limitations. Isn't that reason enough to deny the motion to dismiss? No, Your Honor. I think it's really important because there are really two components to the claims, as the district court found. There's what I call the business model claim, the claim that the policy of excluding third-party App Stores like Cydia, which was implemented in 2008 and 2009, that that was anti-competitive, that that inflicted injury. But don't courts analyze antitrust claims by looking at the holistic look of the combined effects of the anti-competitive conduct? I mean, it seems to me that the overt acts that the court found with respect to the technological updates are inextricably intertwined with the other allegations. And to your point, I know you're relying only on the technological update allegations, but I'm looking at paragraph 32 on ER-180, and for—here, Sarek alleges that Apple's developer agreements have not stayed static and have been updated in recent years with ever more restrictive changes to fill gaps and more conclusively prevent developers from using other App Stores. And consistent with our holding in Samsung, aren't those allegations that Apple fine-tuned its agreements sufficient to establish continuing violations? No, Your Honor, because those fine-tuning—well, first of all, as Your Honors were pointing out, there's no specificity, and I have no idea what they're even talking about myself, and I've looked at these agreements for years. But put that aside. The policy, the final decision, the air pollution case—Samsung cites air pollution—it was final. It was permanent. It was technical. It was complicated to create this technological ecosystem that barred Cydia in 2008 and 2009. That's the injury. And whatever they're complaining about now, Judge Assize, is at least allegedly more damages from that injury. And it's—a policy was to not allow Cydia on the platform. They've never been allowed on the platform. That's what they're complaining about. And I went through the complaint. Paragraph 186, they say, Apple has long harmed competition through these measures. Paragraph 194, Apple harmed competition by excluding competitors for iOS app distribution and iOS payment processing. Paragraph 198 referring to the policy of exclusion that Apple put in place in 2008. That's what this case is about. That's why, Judge Koh, they cast aside the claims that the judge— Are the damages different for the technological design claims versus the warranty and the iOS developer agreement claims? We would argue on the merits, Your Honor, if those cases had gone forward, that they are different and that there are none and that they were—that they're baseless. But at most, at least Judge Gonzales-Rogers viewed those as separate claims and separate allegations that could survive. But here, again, they say that the—they refer to the policy first implemented in 2008 and 2009. If Apple hadn't entered into a single additional developer agreement or consumer warranty agreement, whether the terms were the same or different, Cydia would have been barred from being—having its app store on standard iOS. Would it have been able to keep trying to jail—participate through this jailbreaking process, which is not iOS, which can compromise iOS? That's what it kept doing, but that doesn't restart the statute of limitations. That's the problem with their arguments. And their arguments would defeat the statute of limitations. It would make a mockery of it that every time a consumer buys a phone or a developer signs a new agreement that has nothing—and I'll come back to Samsung—that has nothing to do with Cydia. Cydia is out of the picture. Apple's never had any dealings with Cydia, as the complaint makes clear. But all of a sudden, the statute of limitations is triggered today like a hundred thousand times because people buy an iPhone. That makes no sense. It would defeat Congress's intent to create some certainty under the antitrust laws where cases can be put to bed and parties can have certainty in their business. The other—and I think counsel said they're not arguing about the change in the agreement. Now, maybe he was just being responsive to a question, but it really doesn't matter because they haven't identified any changes that changed anything. And here, the exclusion of Cydia is the problem, is the injury, and it's been the same injury from 2008 and 2009. The Hennigan case—counsel didn't mention it—really, I think, proves our point. There, you had an actual store on the streets of Guam, and the tour operators and the other stores repeatedly steered customers away from that store on the streets of Guam. Here, Cydia was taken off the streets of iOS in 2008 and 2009. No one was steering anyone with respect to Cydia at all. And in Hennigan, if they had taken the store, shut the store down— We have to draw all inferences in favor of the moving party. Why shouldn't we say this is enough? Because, Your Honor, as you pointed out, Iqbal and Tuomly require some specificity, not just these conclusory allegations. And here, the complaint itself, on its face, makes clear that what they're complaining about is this business model implemented in 2008 and 2009. The construct of developer agreements and warranty agreements was put in place in 2008 and 2009. Even more than the air pollution case, this was a permanent, final—it's the fundamental, as they point out, the fundamental component of the company's business model on its devices, to have the app store be the exclusive mechanism for downloading apps onto the phone to protect state safety, reliability, and privacy. That's never changed. Everything else is just noise. It's conclusory. It's not enough under Iqbal and Tuomly. It's really the classic situation that this court in Samsung— Okay, I agree that Samsung involves a licensor and licensee. But what says that that law about the new agreements that might be reaffirming an old agreement but extending it to new products has to be limited to, you know, parties who are in privity versus a situation like we have here? I don't think it necessarily would have to be that—limited to that, depending on the nature of the underlying claim. But here, where the claim is that the injury is that Cydia has been forbidden, has been banished from the iOS platform, the fact that there were other contracts between third parties that had nothing to do with Cydia is not a new injury. It's a reaffirmation. It's a further implementation, at best, of that policy that was implemented in 2008 and 2009. But it does show what this court was talking about. It's basically a classic situation where enforcement of an old contract during the limitations period against the plaintiff, that could trigger the statute of limitations. That was the 2003 agreement in Samsung. And the parties getting together, the conspirators in Samsung, agreeing again to impose a new contract regarding new products, that's a new act this court held. Here, nothing happened. Nothing changed. Cydia was taken off the platform in 2008 and 2009. They knew it. They claim it was a really damaging thing to have happen to them in their complaint. And they sat on their hands for 10 years, 15 years, really, but seven years too late. So it's really a classic situation where a party sat on its rights, saw some developments in the marketplace. They argue that somehow our position is going to gut the antitrust laws. There's been no shortage, as this court knows, of claims just like these. The Epic Games case, which this court affirmed the rejection of the antitrust claims, as they point out in paragraph 6, very similar claims, same types of arguments, rejected on the merits. And there are Johnny Come Lately, who came in when they saw that litigation get filed and took a run at this. And then when the judge below allowed them to proceed on their different claims, the technological claims, they said, we don't care about those anymore. Let's dismiss them so they could appeal and be part of the action on these business model claims, which they sat on for 15 years. Their dismissal wasn't related to the discovery dispute that the parties were having, where they couldn't get adequate discovery on their other claims because they're all so intertwined, the various allegations. I mean, I know you say that they sort of abandoned those claims, but the record seems to indicate that the parties were having significant discovery disputes. And the way I read it is that they just decided we're not getting anywhere here. We might as well take this up on appeal and dismiss those claims. That's one of the things they said. That was a tactical decision, Your Honor, one way or another. Whatever their motivations were, they decided it wasn't worth it to litigate the technological claims. They dismissed them with prejudice. Those claims are gone forever. So they could get a final judgment and be before you. If they hadn't done that, we couldn't be before you because there wouldn't be a final judgment. So they gave up those claims to put all their, push all their chips on the business model challenge that is at stake in the consumer class actions, in the developer class actions, in the Epic Games case. And they just were far too late. They waited. The first one of these cases that was filed, I think, was 2011. So that would have been within the limitations period for them. And for whatever business reasons, they decided not to bring a suit. It's the classic example of where the statute of limitations should bar the claims. There's no problem with enforcement. The antitrust laws are being enforced. But this party waited way too long to assert its alleged legal rights. And with that, I will sit down unless you have other questions. I don't have any questions.  Thank you. Thank you very much. Thank you, Your Honor. Just to respond to Judge Desai's question, yes, the claims are inextricably intertwined. And yes, there were issues about discovery. And that is why we are here. So I just want to make that clear. The second point I want to make is that opposing counsels... Are the damages different for your technological design change claims? Because that's usually why plaintiffs do this, right? Usually there's either a proof issue or there's a damages issue. I think the problem is it all fits together. That is, the city was finally excluded from the market within the limitations period as a result of all of these things together. So I think to try to disentangle them would be extremely difficult, if not impossible. Opposing counsel doesn't make reference to the new enforcement within the limitations period. Can you answer the questions about Samsung? I mean, Samsung was a license or licensee situation. And Panasonic and all those companies who are alleged to be co-conspirators here did actually conspire again to reach a new agreement, which culminated in 2006 license. And neither of those seem present here. So why should we rely on Samsung here? Right. So here it's a different kind of claim because it's a tying and exclusive dealing claim. And the reason why that matters is because each agreement that binds a new consumer regarding a new iPhone or a new app developer is, in fact, depriving city of a customer. And that is the antitrust. But your argument is a little inconsistent because you concede that if we were to say every single new iPhone sale re-triggers the statute of limitations, essentially vitiates the statute of limitations, you make that concession in your brief. I read it. But you're saying, yes, but any agreement that accompanies every new iPhone sale, that does trigger the statute of limitations. And I just find those to be...they're not really different, right? Either way, you're going to vitiate the statute of limitations. What is it different to say, I concede the sale is not a new act, but the agreement that comes with the sale is? Because they have the choice whether or not to bind the consumer with that new app developer with a new agreement. They don't have to. That's a choice that they're making every single time. And when they make that choice, they have to face the consequences of that choice. And when that choice is a tying, is an exclusive dealing that causes injury to a competitor, then it is a continuing violation of the antitrust laws. And even putting aside those agreements, the continuing enforcement is, under precedents like Hanover's, regardless of whether there are changes, a continuing violation of the antitrust laws. I see my time has concluded. All right. Thank you. Thank you to both counsel. This was a very helpful argument. All right. Thank you all. We're going to take a 10-minute break. 10-minute break. Thank you. We'll be back. And then the Crown Home Parties can go ahead and take counsel table during the break if they wish. All rise. This court stands in recess for 10 minutes. Thank you.
judges: KOH, THOMAS, DESAI